UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ISLAND VENTURES, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2263** |
| **K-MAR SUPPLY II, LLC ET AL** | **SECTION: "G"(4)** |

**ORDER AND REASONS**

Before the Court is Plaintiff Island Ventures, LLC's ("Plaintiff") "Motion to Remand."[1] Defendants Mann+Hummel Filtration Technology US, LLC ("Mann-Hummel"), National Automotive Parts Association ("NAPA"), and Genuine Parts Company ("Genuine") (collectively, "Removing Defendants") oppose the motion.[2] Considering the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion to remand.

## I. Background

This case arises out of two alleged engine failures on board the M/V KOBE CHOUEST, one of which allegedly occurred while the vessel was traveling to Fourchon, Louisiana.[3] Plaintiff avers that, at the time of the alleged incidents on June 15, 2019, and July 8, 2020, the M/V KOBE CHOUEST was owned by Plaintiff.[4] Plaintiff claims that the alleged engine failures were caused

---

[1] Rec. Doc. 3.

[2] Rec. Doc. 5.

[3] Rec. Doc. 1-3 at 6.

[4] *Id.* at 6–7.

1

by defective oil filters used in the port main engine.[5] Plaintiff also claims that the first incident "set[] off the fire alarms and caus[ed] a complete engine shutdown."[6]

On July 13, 2020, Plaintiff filed this lawsuit in the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.[7] Plaintiff names the following companies as "Product Defendants" in the lawsuit: K-Mar Supply II, LLC ("K-Mar"), Mann-Hummel, Genuine, and NAPA.[8] Plaintiff identifies K-Mar as a citizen of Louisiana, Mann-Hummel as a citizen of Delaware, and NAPA and Genuine citizens of Georgia.[9] Plaintiff also identifies itself as a citizen of Louisiana.[10] In the notice of removal, Removing Defendants contend that Mann-Hummel is a citizen of North Carolina, but Removing Defendants do not contest the citizenship of any other party.[11]

Plaintiff alleges that as a result of the "careless, negligent, and improper defective design, lack of warnings, defective manufacture, marketing, distribution, sale, and inspection of the defective filters, Product Defendants herein are strictly liable to Plaintiff pursuant to the laws of the State of Louisiana and the General Maritime Law of the United States."[12] Specifically, Plaintiff alleges that the Removing Defendants "designed, manufactured and/or distributed the

---

[5] *Id.* at 7.

[6] *Id.* at 6.

[7] Rec. Doc. 1-3.

[8] *Id.* at 5.

[9] *Id.*

[10] *Id.*

[11] Rec. Doc. 1 at 6.

[12] *Id.* at 8.

2

defective filters," and K-Mar "marketed and sold the defective filters."[13] Plaintiff seeks damages, costs and interest, and equitable relief.[14]

Removing Defendants removed the action to this Court on August 14, 2020, pursuant to the federal diversity jurisdiction statute Title 28, United States Code, Section 1332.[15] In the notice of removal, Removing Defendants submit that in-state defendant K-Mar is improperly joined and its citizenship must be disregarded pursuant to Title 28, United States Code, Section 1441(b).[16] Specifically, Removing Defendants allege that "discrete and undisputed facts preclude Plaintiff's ability to recover any damages against the in-state defendant, K-Mar."[17] Removing Defendants assert that the Louisiana Products Liability Act ("LPLA") forbids the imposition of tort liability on K-Mar because K-Mar does not qualify as a manufacturer pursuant to the LPLA.[18]

In the notice of removal, Removing Defendants further allege that Louisiana law also shields non-manufacturer sellers from liability from damages for negligence unless the seller "knew or should have known that the product sold was defective."[19] Removing Defendants claim that "[Plaintiff] cannot establish that K-Mar knew or should have known that the product sold was defective; thus K-Mar cannot possibly be liable for damages in negligence."[20] For these reasons, Removing Defendants argue that K-Mar, the sole in-state defendant, was improperly

---

[13] Id.

[14] Id. at 9.

[15] Rec. Doc. 1.

[16] Id. at 2–5.

[17] Id. at 5.

[18] Id.

[19] Id.

[20] Id.

3

joined and should not be considered for purposes of establishing diversity jurisdiction.[21]

On September 11, 2020, Plaintiff filed the instant motion to remand this action to the 17th Judicial District Court for Lafourche Parish, Louisiana.[22] Removing Defendants filed an opposition to the motion on September 29, 2020.[23] Plaintiff replied on October 6, 2020.[24]

## II. Parties' Arguments

### A.  *Plaintiff's Motion to Remand*

Plaintiff offers two related arguments in support of remand. First, Plaintiff contends that since the claims central to this lawsuit are maritime in nature, it is entitled to maintain its action in state court pursuant to the "saving-to-suitors" clause, codified at Title 28, United States Code, Section 1333(1).[25] Plaintiff asserts that the petition alleges *in personam* products liability claims that satisfy the two-part test for determining the applicability of maritime jurisdiction announced by the Supreme Court in *Grubart*.[26] According to Plaintiff, the saving-to-suitors clause of 28 U.S.C. § 1333 preserves the right to have a state court adjudicate maritime causes of action in an *in personam* proceeding.[27] Plaintiff relies on Fifth Circuit precedent in *In re Dutile* to argue that these general maritime law claims brought in state court are not removable under 28 U.S.C.

---

[21] *Id.* at 2–5.

[22] Rec. Doc. 3.

[23] Rec. Doc. 5.

[24] Rec. Doc. 7-1.

[25] Rec. Doc. 3-1 at 3–6.

[26] *Id.* at 3 (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)); *see also id.* at 6.

[27] *Id.* at 5.

§ 1333 absent an independent basis for federal jurisdiction.[28]

Second, Plaintiff argues that in-state defendant K-Mar was not improperly joined to the lawsuit and K-Mar's presence in the lawsuit destroys complete diversity.[29] Plaintiff asserts that the petition sets forth a maritime products liability claim governed by Section 402A of the Restatement of Torts (Second) ("Restatement").[30] Plaintiff contends that unlike the LPLA, the Restatement does not proscribe tort liability for "pure" sellers of defective products who do not promote the product as their own or exercise control over the characteristics of the product.[31] Plaintiff argues that since state law conflicts with the Restatement, the Court should apply the Restatement's rules to find that K-Mar could be found liable and therefore was not improperly joined.[32] In the alternative, Plaintiff contends that even if the LPLA governs this action, Removing Defendants "have not satisfied their burden to prove that [Plaintiff] could never make a recovery against K-Mar, so as to be entitled to removal."[33]

**B.      *Removing Defendants' Arguments in Opposition***

In opposition, Removing Defendants first challenge Plaintiff's assertion that the saving-to-suitors clause of 28 U.S.C. § 1333 prohibits the removal of maritime actions without an independent basis for federal jurisdiction.[34] Specifically, Removing Defendants contend that this

---

[28] *Id.* at 5–6.

[29] *Id.* at 6–12.

[30] *Id.* at 7–8.

[31] *Id.* at 8.

[32] *Id.* at 8–9.

[33] *Id.* at 10.

[34] Rec. Doc. 5 at 1–2.

is an unsettled area of law within the Fifth Circuit.[35]

Removing Defendants then argue that "Plaintiff asserts product liability claims under both the [LPLA] and general maritime law."[36] Removing Defendants contend that in this case, an independent basis for federal jurisdiction over Plaintiff's state law claim exists pursuant to the diversity jurisdiction statute 28 U.S.C. § 1332.[37] Removing Defendants aver that the amount in controversy and complete diversity requirements for removal are satisfied, reasserting that in-state defendant K-Mar was improperly joined in this action.[38] For the same reasons set forth in the notice of removal, Removing Defendants argue that recovery against K-Mar is precluded by the LPLA.[39]

Removing Defendants also argue that this case presents a novel issue regarding whether strict liability or the negligence standard governs the liability of nonmanufacturing product sellers in general maritime law.[40] Removing Defendants contend that "novel issues of general maritime law weigh in favor of federal jurisdiction."[41]

Finally, Removing Defendants note that "[s]hortly after undertaking representation and attempting to contact K-Mar, [d]efense counsel learned that one of K-Mar's owners and counsel's contact was employed by Plaintiff or a business entity substantially related to Plaintiff."[42] For this

---

[35] *Id.*

[36] *Id.* at 3 (emphasis omitted).

[37] *Id.* at 3–4.

[38] *Id.* at 3.

[39] *Id.* at 3–4.

[40] *Id.* at 4–5.

[41] *Id.* at 4.

[42] *Id.* at 7.

6

reason, Removing Defendants ask that the Court delay its decision to allow time for Removing Defendants to conduct jurisdictional discovery and "depose K-Mar to further explore the issue of fraudulent joinder."[43]

### C. *Plaintiff's Arguments in Further Support of Remand*

In reply, Plaintiff denies Removing Defendants' claim that the petition involves both a general maritime law claim and a state law claim, asserting that the petition presents "exclusively maritime" claims.[44] Plaintiff restates that in maritime products liability cases, "a plaintiff can maintain a cause of action against a non-manufacturing seller that places a defective product into the stream of commerce," and that inconsistent law under the LPLA does not provide a basis for removal.[45] Plaintiff also contends that Removing Defendants' argument that the uncertainty of the applicability of strict liability for sellers under general maritime law is misplaced. [46] Finally, Plaintiff argues that jurisdictional discovery is unnecessary in this case.[47]

## III. Legal Standard

### A. *Diversity Jurisdiction and the Forum Defendant Rule*

"Federal courts are courts of limited jurisdiction. They possess only the power authorized by [the] Constitution and statute, which is not to be expanded by judicial decree."[48] Pursuant to the removal statute, a defendant may remove a state civil court action to federal district court if

---

[43] *Id.*

[44] Rec. Doc. 7-1 at 1.

[45] *Id.* at 6.

[46] *Id.* at 7.

[47] *Id.* at 8.

[48] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).

the federal court has original jurisdiction over the action.[49] A federal court has subject matter jurisdiction over an action under 28 U.S.C. § 1332 "where the matter in controversy exceeds the sum or value of $75,000" and the action "is between citizens of different states."[50] "When removal is based on diversity of citizenship, diversity must exist at the time of removal."[51] The removing party bears the burden of demonstrating that federal jurisdiction exists by a preponderance of the evidence.[52] Moreover, the removal statute must be strictly construed, and "any doubt about the propriety of removal must be resolved in favor of remand."[53]

Pursuant to 28 U.S.C. § 1441, an action that is otherwise removable based solely on diversity "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."[54] This limitation is often referred to as the "forum defendant rule."[55] A violation of the forum defendant rule renders removal procedurally defective.[56]

---

[49] 28 U.S.C. § 1441(a); *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 34 (2002).

[50] 28 U.S.C. § 1332(a)(1).

[51] *Texas Beef Grp. v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000) (citing 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3723 (1998 ed.)).

[52] *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[53] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (internal citation omitted); *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[54] 28 U.S.C. § 1441(b)(2).

[55] *See In re 1994 Exxon Fire Chem. Fire*, 558 F.3d 378, 391 (5th Cir. 2009).

[56] *Id.* at 392–94.

B.     *Improper or "Fraudulent" Joinder*[57]

In this case, the parties do not dispute that K-Mar is a citizen of Louisiana, and its presence in the suit destroys complete diversity of citizenship and violates the forum defendant rule. Despite the presence of a non-diverse, forum defendant in this lawsuit, Removing Defendants argue that removal is proper because Plaintiff has fraudulently joined K-Mar in this suit.[58]

"The fraudulent joinder doctrine ensures that the presence of an improperly joined, non-diverse defendant does not defeat federal removal jurisdiction premised on diversity."[59] The party asserting improper joinder "bears a heavy burden of proving that joinder of the in-state party was improper."[60] The Fifth Circuit has long recognized two methods of improper joinder: (1) actual fraud in the pleading of jurisdictional facts, and (2) the inability of the plaintiffs to plead a cause of action against the non-diverse defendants in state court.[61] In this case, Removing Defendants allege that K-Mar is improperly joined because Plaintiff cannot plead a cause of action against K-Mar.[62]

In *Smallwood v. Illinois Central Railroad Co.*, the Fifth Circuit stated that "the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover

---

[57] The Fifth Circuit refers to "fraudulent joinder" as "improper joinder." *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005). However, the term "fraudulent joinder" is still used in many Fifth Circuit cases. *See, e.g., Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006).

[58] Rec. Doc. 5 at 3.

[59] *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009) (internal citations omitted).

[60] *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 574 (5th Cir. 2004).

[61] *Crockett*, 436 F.3d at 532 (internal citations omitted).

[62] Add cite to removal notice

against an in-state defendant."[63] District courts may assess whether a plaintiff has "a reasonable basis of recovery" in either of two ways.[64] First, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim [] against the in-state defendant."[65] Second, in rare cases, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[66]

If a court decides to "pierce the pleadings" when assessing a claim of improper joinder, it may "consider summary-judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff," and resolve "[a]ny contested issues of fact and any ambiguities of [] law" in the plaintiff's favor.[67] However, a court does not assess "whether the plaintiff will actually or even probably prevail on the merits of the claim," but only determines whether there is "a possibility that the plaintiff might do so."[68] In other words, where courts choose to pierce the pleadings, the party asserting fraudulent joinder must provide evidence that "negate[s] the possibility" that the non-diverse party may be held liable.[69] The Fifth Circuit has stated that district courts should look at summary-judgment-type evidence at this stage of the proceedings only in those cases, "hopefully few in number, in which a plaintiff has stated a claim, but has

---

[63] *Smallwood*, 385 F.3d at 573.

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] *Travis v. Irby*, 326 F.3d 644, 648–49 (5th Cir. 2003).

[68] *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005).

[69] *Travis*, 326 F.3d at 650.

misstated or omitted discrete facts that would determine the propriety of joinder."[70] Even in such cases, the district court's decision to pierce the pleadings and conduct a summary inquiry is within in its discretion.[71]

### III. Analysis

A.   *Whether Plaintiff's Claims are Governed by General Maritime Law*

At the outset, the parties dispute the nature of Plaintiff's claims in the instant action. Plaintiff asserts that "the claims involved in this lawsuit are exclusively maritime."[72] In contrast, Removing Defendants suggest that Plaintiff brings two claims: one subject to general maritime law and a second state law claim governed by the LPLA.[73]

The Court finds that Plaintiff's claims against K-Mar lie in admiralty and are all subject to general maritime law. Plaintiff states in the petition that it brings product liability claims "pursuant to the laws of the State of Louisiana and the General Maritime Law of the United States."[74] Nevertheless, Plaintiff clearly invokes admiralty jurisdiction pursuant to 28 U.S.C. § 1333.[75] Additionally, Plaintiff satisfies the "location" and "connection with maritime activity" requirements for admiralty jurisdiction.[76]

"With admiralty jurisdiction comes the application of substantive admiralty law."[77] "For

---

[70] *Smallwood*, 385 F.3d at 573.

[71] *Id.*

[72] Rec. Doc. 7-1 at 1.

[73] *See* Rec. Doc. 5 at 2–3.

[74] Rec. Doc. 1-2 at 8.

[75] *Id.* at 6.

[76] *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

[77] *East River S.S. Corp v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986) (internal citations omitted).

11

claims brought in admiralty, "[a]bsent a relevant statute, the general maritime law, as developed by the judiciary, applies."[78] In *East River S.S. Corp. v. Transamerica Delaval, Inc.*, the Supreme Court "recogniz[ed] products liability, including strict liability, as part of the general maritime law."[79] Accordingly, the Court concludes that Plaintiff's product liability claims are governed by general maritime law.

**B.   *Whether the Saving-to-Suitors Clause of 28 U.S.C. § 1333 Prohibits Removal Absent an Independent Basis for Federal Jurisdiction***

Having established that Plaintiff brings its claim under general maritime law, the Court must now address whether the saving-to-suitors clause of 28 U.S.C. § 1333 prohibits removal of general maritime claims absent an independent basis for federal jurisdiction. Plaintiff contends that the savings-to-suitors clause prohibits the removal of general maritime law claims brought in state court absent a jurisdictional basis independent of the federal court's admiralty jurisdiction.[80] Removing Defendants counter that "[t]he Fifth Circuit has yet to provide an answer as to whether a 'savings-to-suitors' case can be removed without a separate, independent basis for federal jurisdiction."[81]

Article III of the U.S. Constitution extends the judicial power of the United States to "all Cases of admiralty and maritime Jurisdiction."[82] Congress first codified this jurisdictional grant in the Judiciary Act of 1789, which provides:

> That the district courts shall have, exclusively of the courts of the several States . . . exclusive original cognizance of all civil causes of admiralty and maritime

---

[78] *Id.*

[79] *Id.* at 865.

[80] Rec. Doc. 3-1 at 5–6.

[81] Rec. Doc. 5 at 2.

[82] U.S. Const., Art. III, § 2.

> jurisdiction . . . within their respective districts as well as upon the high seas; saving to suitors in all cases, the right of a common law remedy, where the common law is competent to give it.[83]

That last sentence, commonly referred to as the saving-to-suitors clause, has been reworded over the years, but "its substance has remained largely unchanged."[84] Today, 28 U.S.C. § 1333(1) provides that the district courts shall have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."[85]

In *Romero v. Int'l Terminal Operating Co.*, the United States Supreme Court held that if a maritime plaintiff sues in state court seeking common-law remedies, the case falls within the saving-to-suitors clause's "exception" to federal jurisdiction.[86] The Supreme Court also rejected the argument that saving clause claims fall within "the laws of the United States" for purposes of federal question jurisdiction pursuant to 28 U.S.C. § 1331.[87] Following *Romero*, federal courts continued to hold that saving clause claims cannot be removed from state court unless there is an independent basis for federal jurisdiction.[88]

---

[83] Ch. 20, § 9, 1 Stat. 73.

[84] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 443–44 (2001); *see also* 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled. . . .").

[85] 28 U.S.C. § 1333(1).

[86] *See* 358 U.S. 354, 362 (1959) (maritime actions seeking common-law remedies fell within the saving-to-suitors clause and were "traditionally administered by common-law courts of the original States"); *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 222 (5th Cir. 2013) ("However, admiralty jurisdiction is not present in this suit because Barker filed in state court, therefore invoking the saving-to-suitors exception to original admiralty jurisdiction.").

[87] *Romero*, 358 U.S. at 360.

[88] *See, e.g., Gaitor v. Peninsular & Occidental Steamship Co.*, 287 F.2d 252, 255 (5th Cir. 1961) (holding that *Romero* "made clear that except in diversity cases, maritime litigation brought in state courts could not be removed to the federal courts."); *Bisso Marine Co., Inc. v. Techcrane Intern., LLC*, No. 14-0375, 2014 WL 4489618, at *3 (E.D. La. Sept. 10, 2014) (stating that "[f]or more than 200 years," a maritime action

13

However, following Congress's December 2011 amendment to the general removal statute, 28 U.S.C. § 1441, some district courts changed course to hold that the amendment rendered saving clause claims freely removable under 28 U.S.C. § 1441.[89] For example, in *Ryan v. Hercules Offshore, Inc.*, a district court in the Southern District of Texas held that the amended statute allows removal of maritime claims over which the Court has original jurisdiction, notwithstanding the saving-to-suitors clause.[90] Nevertheless, following the 2011 amendment, every district judge in the Eastern District of Louisiana to consider this issue, including the undersigned Chief United States District Judge, maintained that general maritime law claims are not removable under § 1333 as part of the original jurisdiction of the court absent an independent basis for federal jurisdiction.[91] Most recently, in *Darville v. Tidewater Marine Serv., Inc.*, this Court surveyed the history of the Judiciary Acts of 1789 and 1875 and expressly rejected the reasoning in *Ryan* in light of the "long history of maritime removal jurisdiction."[92]

---

brought in state court was not removable to federal court "based on admiralty jurisdiction alone.").

[89] *See, e.g., Ryan v. Hercules Offshore, Inc.*, 945 F. Supp. 2d 772, 778 (S.D. Tex. 2013); *Exxon Mobil Corp. v. Starr Indem. & Liab. Co.*, No. H-14-1147, 2014 WL 2739309, *2 (S.D. Tex. June 17, 2014) (Atlas, J), remanded on other grounds on reconsideration, 2014 WL 4167807 (S.D. Tex. Aug. 20, 2014); *Provost v. Offshore Service Vessels, LLC*, No. 14-89-SDD-SCR, 2014 WL 2515412, *3 (M.D. La. June 4, 2014) (Dick, J); *Carrigan v. M/V AMC AMBASSADOR*, No. H-13-03208, 2014 WL 358353, *2 (S.D. Tex. Jan. 31, 2014) (Werlein, J); *Bridges v. Phillips 66 Co.*, No. 13-477-JJB-SCR, 2013 WL 6092803, *5 (M.D. La. Nov. 19, 2013) (Brady, J); *Wells v. Abe's Boat Rentals Inc.*, No. H-13-1112, 2013 WL 3110322, *3 (S.D. Tex. June 18, 2013) (Rosenthal, J).

[90] *Ryan*, 945 F. Supp. 2d at 778.

[91] *Parish v. BEPCO, L.P.*, No. 13-6704, 2015 WL 4097062 (E.D. La. July 7, 2015) (Brown, J.). *See* Wright and Miller, 14A Fed. Prac. & Proc. § 3674 (4th ed.) ("Several district courts that have considered the issue since have followed the reasoning of the *Ryan* court, but a majority have proffered reasons why admiralty jurisdiction does not independently support removal."). *See also Yavorsky v. Felice Navigation, Inc.*, 2014 WL 5811699, *5 (E.D. La. Nov. 7, 2014) (Lemmon, J); *Henry J. Ellender Heirs, LLC v. Exxon Mobil Corp.*, 42 F. Supp. 2d 812, 2014 WL 4231186, *6 (E.D. La. Aug. 26, 2014) (Fallon, J); *Bisso Marine Co., Inc. v. Techcrane Intern., LLC*, 2014 WL 4489618, *4 (E.D. La. Sep. 10, 2014) (Feldman, J); *Riley v. Llog Exploration Co. LLC*, 2014 WL 4345002, *3 (E.D. La. Aug. 28, 2014) (Milazzo, J); *Gregoire v. Enter. Marine Servs., LLC*, No. 14-840, 2014 WL 3866589, at *3 (E.D. La. Aug. 6, 2014) (Duval, J.); *Grasshopper Oysters, Inc. v. Great Lakes Dredge & Dock, LLC*, 2014 WL 3796150, *2 (E.D. La. July 29, 2014) (Berrigan, J); *Perrier v. Shell Oil Co.*, 2014 WL 2155258, *3 (E.D. La. May 22, 2014) (Zainey, J).

[92] *See Darville v. Tidewater Marine Serv., Inc.*, No. CV 15-6441, 2016 WL 1402837 (E.D. La. Apr. 11,

While Removing Defendants are correct that the Fifth Circuit has not directly addressed the removal issue in light of the 2011 amendment, the Fifth Circuit has acknowledged that "[t]he vast majority of district courts considering this question have maintained that such lawsuits are not removable."[93] Even Judge Gray Miller—the presiding judge in the *Ryan* case—issued a later decision concluding that the saving-to-suitors clause prevents removal of maritime cases absent an independent basis of jurisdiction.[94] This Court follows its prior reasoning, as well as the majority position amongst district courts, to once again hold that general maritime law claims are not removable under 28 U.S.C. § 1333 absent an independent basis of federal jurisdiction.[95]

## C. *Whether there is an Independent Basis for Federal Jurisdiction in this Case*

Because the Court maintains that an independent basis for federal jurisdiction is required for removal of general maritime actions, the Court must now determine whether an independent basis for federal jurisdiction exists in this case. In the notice of removal, Removing Defendants assert that an independent basis for federal jurisdiction under 28 U.S.C. § 1332 exists because the parties are diverse and the amount in controversy exceeds $75,000.[96] Plaintiff argues that independent diversity jurisdiction does not exist because K-Mar is a properly joined, non-diverse, forum defendant.[97] In opposition, Removing Defendants contend that K-Mar was improperly

---

2016) (Brown, J.).

[93] *Sangha v. Navig8 Shipmanagement Private, Ltd.*, 882 F.3 96, 100 (5th Cir. 2018) (internal citations omitted).

[94] *See Sanders v. Cambrian Consultants America, Inc.*, 132 F. Supp. 3d 853 (S.D. Tex. 2015).

[95] *See Darville*, 2016 WL 1402837 at *8; *Parish*, 2015 WL 4097062 at *18.

[96] *See generally* Rec. Doc. 1.

[97] Rec. Doc. 3-1 at 6–9.

15

joined in this action and the remaining parties are diverse.[98]

Removing Defendants do not assert that there is actual fraud in the pleading of jurisdictional facts.[99] Rather, Removing Defendants argue that "discrete and undisputed facts preclude Plaintiff's ability to recover any damages against the in-state defendant, K-Mar."[100] Accordingly, to determine whether K-Mar was properly joined in the instant action, the Court must determine whether Plaintiff has "a reasonable basis of recovery" against K-Mar.[101] Additionally, as discussed *supra*, Plaintiff's product liability claims are governed by general maritime law. Thus, the Court applies the principles of general maritime law to conduct this inquiry.

Here, the parties dispute whether the Restatement or the LPLA provisions regarding liability for a nonmanufacturer seller govern in general maritime law. Plaintiff argues that the Restatement governs in general maritime law, and the Restatement provides that nonmanufacturer sellers such as K-Mar can be held liable for harm caused by a defective product placed in the stream of commerce.[102] Plaintiff therefore contends that pursuant to general maritime law, K-Mar may be held liable and is properly joined.[103] Removing Defendants counter that K-Mar cannot be held liable because the LPLA—which Removing Defendants suggest may apply in general maritime law—does not allow a cause of action against nonmanufacturing sellers.[104]

---

[98] Rec. Doc. 5 at 3.

[99] Rec. Doc. 1 at 3.

[100] *Id.* at 5.

[101] *Smallwood*, 385 F.3d at 573.

[102] Rec. Doc. 3-1 at 7–8.

[103] *Id.*

[104] Rec. Doc. 5 at 3–7.

Neither party contends that K-Mar falls under the LPLA's definition of "manufacturer."[105] Accordingly, whether there is a possibility of recovery by Plaintiff against K-Mar hinges on whether the Court applies the LPLA or the Restatement to determine whether there is a reasonable basis for recovery against K-Mar. In *Transco Syndicate No. 1, Ltd. V. Bollinger Shipyards, Inc.*, another section of this Court recognized that "[t]he Supreme Court and the Fifth Circuit have applied Section 402A of the Restatement of Torts (Second) to maritime products liability cases."[106] Nevertheless, some sections of this Court have continued to apply the LPLA's provisions only to the extent that they do not conflict with the Restatement.[107] Additionally, recent caselaw from other sections of this Court suggests that the LPLA may apply only under even narrower circumstances where it serves to supplement the Restatement by filling a gap in general maritime law.[108]

In this case, the LPLA does not apply because its provisions conflict with the Restatement. While the LPLA "does not provide a cause of action against sellers of products not falling under

---

[105] *See Ayala*, 569 F. App'x at 245.

[106] 1 F. Supp. 2d. 608, 613 (E.D. La. 1998) (Vance, J.) (citing *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 879; *Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (applying the Restatement (Second) of Torts § 402A to a design defect case); *Theriot v. A.S.W. Well Service, Inc.*, No. Civ.A. 89–3687, 1992 WL 349664, *1 (E.D.La. Nov. 17, 1992) ("The United States Court of Appeals for the Fifth Circuit has consulted state laws and the Restatement of Torts to provide the proper framework [for maritime products liability law.]")); *see also* 1 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 5–7 (5th ed. 2012) ("The applicable substantive law of products liability in admiralty is Section 402A of the Restatement (Second) of Torts.").

[107] *See, e.g.*, *Penn Mar., Inc. v. Rhodes Elec. Servs., Inc.*, No. CIV.A. 11-02761, 2012 WL 3027937, at *2 (E.D. La. July 24, 2012) (Berrigan, J.); *Transco*, 1 F. Supp 2d. at 614.

[108] *See Parekh v. Argonautica Shipping Investments B.V.*, No. CV 16-13731, 2017 WL 3456300, at *2 (E.D. La. Aug. 11, 2017) (Morgan, J.) ("A court may supplement general maritime law with state law under three conditions: '(1) where there is no applicable admiralty rule; (2) where local and state interests predominate; and (3) where the uniformity principle is not crucial.'"); *Matter of Am. River Transportation, Co., LLC*, No. CV 18-2186, 2019 WL 2847702, at *3 (E.D. La. July 2, 2019) (Lemmon, J.) ("[W]hile there is some authority that the LPLA may be applied to maritime actions when its provisions do not conflict with Section 402A of the Restatement (Second) of Torts, *see Transco*, 1 F. Supp. 2d at 614, a recent case from this district analyzed the question, and determined that there is no basis to supplement the general maritime law of products liability with the LPLA.").

the LPLA's definition of 'manufacturer',"[109] the Restatement provides that sellers of products are "subject to liability" for physical harm caused to the ultimate consumer or his property.[110] Because the LPLA does not apply where it conflicts with the Restatement, the Court applies the Restatement to find that Plaintiff has "a reasonable basis of recovery" against K-Mar and that K-Mar is properly joined in this action.[111] The presence of K-Mar in the lawsuit destroys complete diversity. As a result, the Court concludes that no independent basis for federal subject matter jurisdiction exists and remands this case to state court.[112]

---

[109] *Ayala v. Enerco Group, Inc.*, 569 F. App'x 241, 245 (5th Cir. 2014).

[110] Restatement (Second) of Torts § 402A.

[111] *Smallwood*, 385 F.3d at 573. To the extent that there is any uncertainty about the applicability of the strict liability standard to nonmanufacturing sellers under general maritime law, the Court is also not persuaded by Removing Defendants' argument that "novel issues of general maritime law weigh in favor of federal jurisdiction." Notably, Removing Defendants fail to cite any authority to support this assertion. More fundamentally, Removing Defendants' assertion is mistaken: The saving-to-suitors clause is a congressional mandate that allows maritime plaintiffs to elect to proceed in state court and pursue common law remedies; the Court does not have discretion to maintain jurisdiction over an admiralty case where the plaintiff has elected to proceed in state court and there is no independent basis for federal jurisdiction. Additionally, the improper joinder standard requires only a "reasonable basis for recovery" against a defendant; it does not matter whether it is likely that the plaintiff will prevail on that claim. Finally, the petition in this case does not expressly eschew a negligence, rather than strict liability, claim against K-Mar.

[112] The Court denies Removing Defendants' request to conduct jurisdictional discovery in this matter because Removing Defendants fail to show how jurisdictional discovery is necessary to resolve the issue of improper joinder.

## V. Conclusion

Considering the foregoing reasons, the Court finds that forum defendant K-Mar was properly joined in this action. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Island Ventures, LLC's "Motion to Remand" is **GRANTED**. The above-captioned matter is remanded to the 17th Judicial District Court for the Parish of Lafourche, State of Louisiana.

**NEW ORLEANS, LOUISIANA**, this 26th day of October, 2020.

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**